IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| MAPLEMARK BANK, <br>     *Plaintiff,* <br><br> v. <br><br> J. GLOBAL SUPPLY LLC & JUAN ANTONIO MOLINA <br>     *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | PLAINTIFF'S ORIGINAL COMPLAINT: <br> INJUNCTIVE RELIEF SOUGHT <br><br> Case No.   6:20-cv-2100 |

**PLAINTIFF'S ORIGINAL COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

COMES NOW, Plaintiff MapleMark Bank ("MapleMark" or "Plaintiff"), a Texas State Bank, and files this, its Original Complaint, Application for Temporary Restraining Order, and Application for Preliminary and Permanent Injunctive Relief and, in support of the same, respectfully shows the Court as follows:

## I.
## PARTIES AND SERVICE OF PROCESS

1. Plaintiff MapleMark is a financial institution chartered under the laws of the State of Texas with its principal place of business at 4143 Maple Avenue, Suite 100, Dallas, Texas 75219.

2. Defendant Juan Antonio Molina ("Molina") is an individual residing in Orange County, Florida with his primary residence at 8 South Osceola Avenue, Suite 2410, Orlando, Florida 32801. Molina can be served at his residence or wherever he may be found.

3. Defendant J. Global Supply LLC ("JGS") is a Florida Limited Liability Company with its principal place of business at 415 East Pine Street, Suite 607, Orlando, Florida 32801.

JGS may be served by serving its registered agent, J.T. Molina, at 8 S. Osceola Ave. Suite 2410, Orlando, FL 32801 or wherever he may be found.

## II.
## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys' fees.

5. The Court has personal jurisdiction over Molina and JGS (collectively hereinafter "Defendants") because Molina's primary residence is in Florida and JGS's principal place of business is in Florida.

6. Venue is proper in this Court because Defendants reside in the Middle District of Florida.

## III.
## FACTUAL BACKGROUND

**A.   Defendants Engage in a Scheme to Steal More than $200,000 from MapleMark**

7. Molina is the Chief Executive Officer of JGS.

8. On October 15, 2020, Molina opened a checking account on behalf of JGS with MapleMark (the "MapleMark Account"). On October 22, 2020, Molina purported to fund the checking account by executing an Automated Clearing House ("ACH") Debit/Credit Authorization (the "ACH Authorization"). In the ACH Authorization, Molina authorized MapleMark to transfer $250,000.00 to the MapleMark Account from a checking account that JGS purportedly had with Chase Bank. At the time Molina executed the ACH Authorization, Molina knew that he had already closed the Chase Bank account or, alternatively, that he intended to close the Chase Bank account before the wire transfer went through.

9. Based on the ACH Authorization, MapleMark credited $250,000 to JGS's MapleMark Account on October 22, 2020. Immediately after the funds were credited to JGS, Molina went on a spending spree. On October 23, 2020, one day after purportedly funding the account, Molina directed MapleMark to wire $134,506.35 from its checking account to Prestige Motorcard Imports, Inc. to purchase a luxury sports car—a silver 2019 Aston Martin Vantage, Vin Number SCFSMGAW5KGN00174—with JGS named as the owner. On October 26, 2020, Molina directed MapleMark to wire an additional $100,000 to a Bank of America, N.A. checking account (the "BoA Account"). On October 26, 2020, Defendants also made a $10,000 debit payment from the MapleMark Account for JGS's rent. Moreover, from October 27, 2020 through October 30, 2020, Molina made a number of smaller purchases totaling $2,686.46. For example, on October 28, 2020, Molina spent $242.60 at a night club in Orlando and $900 at Louis Vuitton.

10. On October 28, 2020, MapleMark received notice from Chase Bank that JGS's checking account with Chase Bank had been closed and that there were no funds to transfer to the MapleMark Account. MapleMark immediately reached out to Molina to determine if a mistake had been made, and Molina stated he would initiate a wire from another account to cover the negative balance. However, Molina did not initiate the wire and ignored all further attempts to contact him, making it clear that Defendants engaged in an intentional scheme to defraud MapleMark out of $250,000.

11. After discovering Defendants fraud, MapleMark reached out to Bank of America to see if Defendants had spent the $100,000 Molina directed to be transferred to Bank of America on October 26, 2020. MapleMark learned that Defendants had spent approximately $47,000 from the account but that approximately $53,000 remained in the BoA Account. Bank

of America has preliminarily agreed to freeze Defendants' account and return the remaining funds.

12. Additionally, Molina attempted to defraud MapleMark out of another $5,000,000. On October 27, 2020, Defendants executed and submitted an additional ACH Authorization purportedly granting MapleMark the right to transfer an additional $5,000,000 from JGS's Chase Bank checking account to the MapleMark Account. Of course, having discovered Defendants' fraudulent conduct, MapleMark did not process the request or credit JGS's account.

## IV.
## CAUSES OF ACTION

**A.    Fraud**

13. MapleMark incorporates herein by reference the foregoing allegations.

14. When executing the ACH Authorization, Defendants represented to MapleMark that JGS had a checking account with Chase Bank that contained at least $250,000 in funds and that Defendants would transfer $250,000 from the Chase Bank account to their new MapleMark account (the "Misrepresentations").

15. Defendants' Misrepresentations were material.

16. Defendants knew that the Chase Bank account had already been closed when making the Misrepresentations, or, alternatively, Defendants knew that they intended to close the Chase Bank account before the funds could be transferred to MapleMark.

17. Defendants knew their Misrepresentations were false.

18. Defendants intended MapleMark to rely on their Misrepresentations.

19. MapleMark relied on Defendants' Misrepresentations when agreeing to credit $250,000 to JGS's MapleMark Account.

20. MapleMark was injured as a result of Defendants' Misrepresentations. In particular, MapleMark has paid or transferred approximately $200,000 to third parties at Defendants' request.

### B. Theft Under Florida's Civil Theft Statute

21. MapleMark incorporates herein by reference all foregoing allegations.

22. Through fraud, Defendants knowingly and unlawfully misappropriated $250,000 from MapleMark.

23. Defendants deprived MapleMark of its use and right to the $250,000.

24. Defendants' actions constitute theft under Florida Statute § 812.014.

25. Pursuant to Florida Statute § 772.11, MapleMark is entitled to recover treble damages and all of the reasonable and necessary attorneys' fees and court costs it incurs in pursuing these claims.

### C. Constructive Trust

26. MapleMark incorporates herein by reference all foregoing allegations.

27. Defendants committed actual fraud by misrepresenting that they had $250,000 in the Chase checking account and that $250,000 would be transferred to MapleMark to fund Defendants' new MapleMark account.

28. Defendants' actions have caused Defendants to become unjustly enriched at the expense of MapleMark. In particular, Defendants used the MapleMark Account to purchase an Aston Martin vehicle for $134,506.35. Further, Defendants converted $100,000 of MapleMark's money by transferring it to the BoA Account. The Aston Martin and any funds remaining in the BoA Account are subject to a constructive trust. Additionally, anything purchased by Defendants using funds from the BoA Account and/or the MapleMark Account are likewise

subject to a constructive trust. Defendants are required to hold all such property and funds in a constructive trust for the benefit of MapleMark.

**D.     Application for a Temporary Restraining Order and Preliminary Injunction**

29.     MapleMark incorporates herein by reference the foregoing allegations.

30.     Pursuant to Federal Rule of Civil Procedure 65(b), MapleMark respectfully requests the Court enter an order directing that Defendants and their officers, directors, parents, agents, servants, employees, attorneys, representatives and those in active concert or in participation therewith and any person acting by or under their authority (individually and collectively, the "Enjoined Parties") be: (a) enjoined and restrained from: (i) concealing, damaging, or destroying any property which Defendants purchased with the funds from MapleMark; (ii) assigning, selling, transferring, encumbering, secreting, converting, destroying, wasting, dissipating, disposing of, or expunging any property that was purchased using funds from JGS's MapleMark and/or BoA Accounts; and/or (iii) assigning, transferring, spending, secreting, converting, encumbering, destroying, wasting, disposing of any funds remaining in JGS's checking account with Bank of America; and (b) be required to (i) turnover the silver 2019 Aston Martin Vantage, Vin # SCFSMGAW5KGN00174, to MapleMark to be held, in trust, while this lawsuit remains pending; and (ii) if necessary or required by the Bank of America, execute any documents necessary to cause the Bank of America to cause any funds remaining in JGS's BoA Account to be wired to MapleMark to be held in trust while this lawsuit remains pending.

31.     Unless Defendants and each of the Enjoined Parties are enjoined and restrained and required to act in the manner described in this Complaint, MapleMark will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law. For

example, unless the Enjoined Parties are enjoined and restrained and required to act in the manner described above, MapleMark may be unable to locate the funds that have been stolen by Defendants or trace their disposition. As a result, even after prevailing on its claims, MapleMark may be unable to ever recover on its judgment if Enjoined Parties have spent, wasted, secreted, or otherwise disposed of the funds and/or property purchased with the funds.

32. Further, unless the Enjoined Parties are enjoined and restrained as described herein, MapleMark will suffer diminution in value, wasting of, and/or possibly the destruction of, the Aston Martin that Defendants purchased using the stolen funds. Molina's Instagram page reveals that he is actively and routinely driving the Aston Martin. Each time he drives the Aston Martin, it diminishes in value. Additionally, each time he drives the Aston Martin, he risks damaging the vehicle. Moreover, Molina may try to sell the Aston Martin now that MapleMark and Bank of America have frozen JGS's MapleMark and BoA Accounts. If Defendants were to sell the Aston Martin, they could spend or secret the proceeds from such sale, depriving MapleMark of any realistic chance of recovering the stolen money.

33. Defendants have not yet made an appearance in this lawsuit. The threat of immediate and irreparable injury to MapleMark substantially outweighs any harm that would be sustained by Defendants if the temporary restraining order and preliminary injunction were granted. Injunctive relief is sought for the purpose of restoring and protecting MapleMark's contractual rights, property, and security and/or preventing the repossession, destruction, and/or dissipation of the property that rightfully belongs to MapleMark.

34. MapleMark will likely prevail on the merits of this lawsuit because the evidence demonstrates all of the elements of MapleMark's claims without good cause or justification demonstrated by Defendants for their conduct. Further, the harm faced by MapleMark outweighs

any harm that would be sustained by Defendants if the temporary restraining order and preliminary injunction were granted. Injunctive relief is sought for the purpose of restoring and protecting MapleMark's rights and property and/or preventing the destruction and/or dissipation of the property that rightfully belongs to MapleMark.

35. Because MapleMark will suffer immediate and irreparable injury for which there is no adequate remedy at law, and because they will likely prevail on the merits, MapleMark is entitled to a temporary restraining order, followed by a temporary injunction after notice and hearing as indicated above or as otherwise required by law.  MapleMark is willing to post a bond and requests that the bond be set in the amount of $2,000.00 (a modest amount given the fact that Defendants stole $250,000.00).

**E.     Application for Permanent Injunction**

36. MapleMark incorporates herein by reference the foregoing allegations.

37. As set forth above, Defendants' actions or omissions have caused and are continuing to cause substantial and irreparable damage to MapleMark for which there is no adequate remedy at law. Therefore, after a trial, MapleMark respectfully requests that the Enjoined Parties be: (a) permanently enjoined and restrained from: (i) concealing, damaging, or destroying any property purchased using funds from the MapleMark or BoA Accounts until such time as MapleMark has fully recovered all amounts owed to it; and/or (ii) assigning, selling, transferring, encumbering, secreting, converting, destroying, wasting, dissipating, disposing of, or expunging, without MapleMark's express written consent, any funds that were transferred or withdrawn from JGS's MapleMark or BoA Accounts.

38. MapleMark further respectfully asks that, after a trial, the Court enter a turnover order permanently transferring ownership of the Aston Martin and the remaining funds in the BoA Account to MapleMark.

## V.
## REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff MapleMark respectfully requests that Defendants be cited to answer and appear and that the Court award MapleMark judgment as follows:

1. Judgment against Defendants for all amounts withdrawn, transferred, or spent from JGS's checking account with MapleMark, less any amounts that MapleMark is able to recover from a sale of the Aston Martin and any amounts remaining in JGS's checking account with Bank of America;

2. A temporary restraining order and preliminary junction as outlined in Paragraph 30 of this Complaint;

3. A permanent injunction as outlined in Paragraphs 37 and 38 of this Complaint;

4. Pre- and post-judgment interest at the maximum rate allowed by law or in equity;

5. The reasonable and necessary attorneys' fees and court costs incurred by MapleMark in pursuing this claim;

6. Treble damages;

7. That any bond for a restraining order and/or injunctive relief for which MapleMark applies herein be set in the amount of $2,000.00 or in any other amount determined to be reasonable by the Court; and

8. That MapleMark be awarded such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted,

By: /s/ Buffey E. Klein
Buffey E. Klein
Florida Bar No. 0034639
Buffey.Klein@huschblackwell.com

HUSCH BLACKWELL LLP
1900 North Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 *facsimile*
***ATTORNEYS FOR MAPLEMARK BANK***