IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| MAPLEMARK BANK, | § | |
|    *Plaintiff,* | § | MOTION FOR TEMPORARY |
| | § | RESTRAINING ORDER: |
| v. | § | INJUNCTIVE RELIEF SOUGHT |
| | § | |
| J. GLOBAL SUPPLY LLC & JUAN | § | |
| ANTONIO MOLINA | § | Case No:  6:20-cv-2100-ORL-40DCI |
|    *Defendants.* | § | |

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

COMES NOW, Plaintiff MapleMark Bank ("Plaintiff", or "MapleMark"), a Texas State Bank, and, pursuant to Federal Rule of Civil Procedure 65(b) and Local Rule 4.05, files this, its Motion for a Temporary Restraining Order, and respectfully shows the court as follows:

## I.
## INTRODUCTION

1.  This is an action to recover damages MapleMark suffered when the Defendants defrauded the bank out of $250,000.00. The Defendants used the money to purchase an Aston Martin automobile in Miami and to open an account at Bank of America.  Through this motion, MapleMark seeks to enjoin the Defendants from dissipating the assets purchased with MapleMark's money and to turn over the assets to MapleMark.  This Motion is supported by: (1) the Declaration of Ana L. Rodriguez (the "Rodriguez Declaration") attached hereto and incorporated herein for all purposes as Exhibit "A," as well as the documents attached to the Rodriguez Declaration and (b)  the Declaration of Richard A. Illmer attached hereto as Exhibit "B".

## II.
## FACTS IN SUPPORT OF A TEMPORAY RESTRAINING ORDER

2. Juan Antonio Molina ("Molina") is an officer, owner, and the sole member of J. Global Supply LLC ("JGS") (together with Molina, "JGS").[1]

3. On October 15, 2020, Molina opened a checking account on behalf of JGS with MapleMark (the "MapleMark Account").[2] On October 22, 2020, Molina purported to fund the checking account by executing an Automated Clearing House ("ACH") Debit/Credit Authorization (the "ACH Authorization").[3] In the ACH Authorization, Molina authorized MapleMark to transfer $250,000.00 to the MapleMark Account from a checking account that JGS purportedly held with Chase Bank.[4] At the time Molina executed the ACH Authorization, Molina knew he had closed the Chase Bank account or, alternatively, that he intended to close the Chase Bank account before the wire transfer went through.[5]

4. Based on the ACH Authorization, MapleMark credited $250,000 to JGS's MapleMark Account on October 22, 2020.[6] Immediately after the funds were credited to JGS, Molina went on a spending spree.[7] On October 23, 2020, one day after purportedly funding the account, Molina directed MapleMark to wire $134,506.35 from its checking account to Prestige Motorcard Imports, Inc. to purchase a luxury sports car—a silver 2019 Aston Martin Vantage, Vin Number SCFSMGAW5KGN00174—with JGS named as the owner.[8] On October 26, 2020, Molina directed MapleMark to wire an additional $100,000 to a Bank of America, N.A. checking

---

[1] Ex. A-2.
[2] Ex. A, ¶ 6; Account Agreement executed by Molina on or about October 15, 2020, attached hereto as Exhibit A-1 ("Ex. A-1").
[3] Ex. A, ¶ 7; ACH Authorization executed by Molina on or about October 22, 2020, attached hereto as Exhibit A-3 ("Ex. A-3").
[4] Ex. A, ¶ 7; Ex. A-3.
[5] See Ex. A, ¶ 7.
[6] Ex. A, ¶ 8; JGS's Account Ledger for the MapleMark Account, attached hereto as Exhibit A-4 ("Ex. A-4").
[7] Ex. A, ¶ 9; See Ex. A-4.
[8] Ex. A, ¶ 9; Ex. A-4; Wire Transfer Request from MapleMark to Prestige Motorcard Imports, Inc., dated October 23, 2020, attached hereto as Exhibit A-5 ("Ex. A-5").

account (the "BoA Account").[9]  On October 26, 2020, Defendants also made a $10,000 debit payment from the MapleMark Account for JGS's rent.[10]  Moreover, from October 27, 2020 through October 30, 2020, Molina made a number of smaller purchases totaling $2,686.46.[11]  For example, on October 28, 2020, Molina spent $242.60 at a night club in Orlando and $900.00 at Louis Vuitton.[12]

5. On October 28, 2020, MapleMark received notice from Chase Bank that JGS's checking account with Chase Bank had been closed and that there were no funds to transfer to the MapleMark Account.[13]  MapleMark immediately reached out to Molina to determine if a mistake had been made, and Molina stated he would initiate a wire from another account to cover the negative balance.[14]  However, Molina did not initiate the wire and ignored all further attempts to contact him, including failing to respond to a demand letter from counsel for MapleMark,[15] making it clear that Defendants engaged in an intentional scheme to defraud MapleMark out of $250,000.[16]

6. After discovering Defendants' fraud, MapleMark reached out to Bank of America to see if Defendants had spent the $100,000 Molina directed to be transferred to Bank of America on October 26, 2020.[17]  MapleMark learned that Defendants had spent approximately $47,000 from the account but that approximately $53,000 remained in the BoA Account. Bank

---

[9] Ex. A, ¶ 9; Ex. A-4; Wire Transfer Request from MapleMark to Bank of America, N.A., dated October 26, 2020, attached hereto as Exhibit A-6 ("Ex. A-6").
[10] Ex. A, ¶ 9; Ex A-4.
[11] Ex. A, ¶ 9; Ex. A-4.
[12] Ex. A, ¶ 9; Ex. A-4.
[13] Ex. A, ¶ 10; Ex. A-4.
[14] Ex. A, ¶ 10.
[15] Ex. A. ¶ 16.
[16] *Id.* at ¶ 10.
[17] *Id.* at ¶ 11.

of America has preliminarily agreed to freeze Defendants' account and return the remaining funds.[18]

7. Additionally, Defendants attempted to defraud MapleMark out of another $5,000,000.[19] On October 27, 2020, Defendants executed and submitted an additional ACH Authorization purportedly granting MapleMark the right to transfer an additional $5,000,000 from JGS's Chase Bank checking account to the MapleMark Account.[20] Of course, having discovered Defendants' fraudulent conduct, MapleMark did not process the request or credit JGS's account.[21]

8. Since discovering Molina's fraud, MapleMark has been monitoring Molina's social media accounts. On his Instagram account, Molina has posted photos showing that he is actively and routinely driving the 2019 Aston Martin he purchased with MapleMark's stolen funds.[22] One of the photos suggests that Molina is considering purchasing a Bentley automobile.[23]

9. Counsel for MapleMark, Richard A. Illmer, has attempted to contact Molina by cell phone and email to let him know about this filing, but received no response.[24]

### III.
### ARGUMENTS & AUTHORITIES

A. **STANDARD FOR GRANTING A TEMPORARY RESTRAINING ORDER**

10. Based upon the facts outlined above, MapleMark requests that the Court issue the Temporary Restraining Order against the Defendants pursuant to Federal Rule of Civil Procedure

---

[18] *Id.*
[19] *Id.* at ¶ 12.
[20] *Id.*; ACH Authorization executed by Defendants dated October 27, 2020, attached hereto as Exhibit A-7 ("Ex. A-7").
[21] Ex. A, ¶ 12.
[22] Ex. A, ¶ 13; Ex. A-8.
[23] *Id.*
[24] Ex. B.

65. A plaintiff is entitled to injunctive relief if it demonstrates: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the harm that an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). To obtain a temporary restraining order, a plaintiff must also show that notice and a hearing on the application for injunctive relief would be impractical if not impossible. *Creative Touch Interiors, Inc. v. Prugner*, No. 6:15-cv-1165-Orl-37DAB, 2015 WL 4429294, *2 (M.D. Fla. July 20, 2015).

11. The purpose of a temporary restraining order "is to protect the movant from irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *TemPay Inc. v. Biltres Staffing of Tampa Bay, LLC*, No. 8:11-cv-2732-T-27AEP, 2011 WL 13143957, *1 (M.D.Fla. Dec. 13, 2011) (citing *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)). Although a motion for temporary injunctive relief must be supported with affidavits and/or a verified complaint, when considering such a motion, the district court may rely on affidavits and hearsay materials that may not be generally admissible as evidence at trial. *TemPay,* 2011 WL 13143957 at *1 n.1 (citing *Levi Strauss*, 51 F.3d at 985).

**B. MAPLEMARK HAS SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

12. MapleMark has claims against Defendants for fraud and theft under Florida's Civil Theft Statute. The remedies MapleMark seeks include imposition of a constructive trust on the assets Defendants acquired with MapleMark's ill-gotten proceeds.

13. The elements of a claim for fraud are: (1) a false statement concerning a material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation. *Serefex Corporation v. Hickman Holdings, LP*, 695 F.Supp.2d 1331, 1342 (M.D.Fla. 2010). Here, Defendants misrepresented to MapleMark that they had $250,000 in a Chase Bank account that they would wire to MapleMark to fund the MapleMark account.[25] However, Defendants never intended to transfer the $250,000 to MapleMark.[26] As intended by Defendants, MapleMark relied on Defendants representation which caused it to credit $250,000 to Defendants' checking account.[27] Defendants have since spent or removed most of the funds from the MapleMark Account.[28] Accordingly, MapleMark has a substantial likelihood of succeeding on its fraud claim.

14. A constructive trust is appropriate where "a person…holds title to property [and] is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994). The remedy is proper where money is obtained by fraud. *Id.* at 1519. As is outlined above, Defendants obtained $250,000 from MapleMark through fraud, and Defendants would be unjustly enriched if they were permitted to retain the funds or the automobile and other items they purchased with the funds. Therefore, constructive fraud is an appropriate remedy and MapleMark is likely to prevail on its claim.

15. The Florida Civil Theft Statute provides a remedy for any plaintiff that can prove that he has been injured "in any fashion by reason of any violation" of §§ 812.012 – 812.037 of

---

[25] Ex. A, ¶ 7; Ex. A-3.
[26] *See* Ex. A, ¶¶ 7 – 12.
[27] Ex. A, ¶ 8.
[28] Ex. A, ¶ 9; Ex. A-4; Ex. A-5; Ex. A-6.

Florida Statutes. Florida Statute § 772.11. Florida Statute § 812.014 provides that a "person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) deprive the other person of a right to the property or a benefit from the property [or] (b) appropriate the property to his or her own use or to the use of any person not entitled to the use of the property." Here, Defendants deprived MapleMark of $250,000.[29] Defendants never intended to transfer the $250,000 from the Chase Bank account to MapleMark as is evidenced by the fact that the Chase Bank account was closed before the transfer could occur; immediately after opening the account, Defendants transferred $100,000 to a Bank of America account to remove the funds from MapleMark's control; Defendants have avoided and dodged MapleMark since the deception was discovered; and Defendants tried to obtain another $5,000,000.00 from MapleMark using the same scheme.[30] MapleMark has been deprived of its right to the funds spent or transferred from the MapleMark account by Defendants. Therefore, MapleMark has a substantial likelihood of success on the merits of its Civil Theft claim.

**C.   MAPLEMARK HAS ESTABLISHED THAT IT WILL LIKELY SUFFER IRREPARABLE HARM IF THE TRO IS NOT ENTERED**

16.   Courts in the Eleventh Circuit have recognized that a plaintiff satisfies the irreparable harm requirement where it presents evidence showing that it is likely the plaintiff was the victim of a scheme to defraud the plaintiff. *See TemPay*, 2011 WL 13143957 at *2 ("Plaintiff has established that it will suffer irreparable harm absent a temporary restraining order because Plaintiff made certain payments to Defendants…as a direct result of an alleged scheme to defraud…") (citing *Bloomfield Institutional Opportunity Fund, LLC v. Allen Investment Properties, LLC*, No. 8:10-cv-1475-T-17MAP, 2010 WL 3394265 (M.D.Fla. Aug. 9, 2010)).

---

[29] Ex. A, ¶¶ 8 – 10.
[30] *See* Ex. A.

Moreover, irreparable harm is shown where the plaintiff presents evidence that the defendant is likely to dispose or conceal funds or traceable assets obtained from the plaintiff through fraud. *Tempay*, 2011 WL 13143957 at *2 ("[T]here is a strong likelihood that Defendants will attempt to dispose of or hide those funds (or traceable assets) absent a temporary restraining order.") (citing *Hudson Nat'l Bank v. Shapiro*, 695 F.Supp. 544, 549 (S.D.Fla. 1988)).

17. Here, MapleMark has presented evidence that it was the victim of Defendants' fraud scheme and that Defendants have disposed of and concealed funds and traceable assets they obtained from MapleMark through their fraud.[31] In particular, MapleMark has shown that, Defendants transferred $100,000 to an account at Bank of America to prevent MapleMark from taking control of the funds once the deception was discovered.[32] In addition, Molina's Instagram photos which suggest he is considering purchasing a Bentley give rise to the reasonable inference that Molina will sell the Aston Martin in order to buy the Bentley. Such an act would be a blatant attempt to avoid the constructive trust and hide assets from MapleMark.

18. Moreover, MapleMark has further shown that it will likely suffer irreparable harm if Molina is allowed to continue driving the Aston Martin that he purchased using the funds stolen from MapleMark. In particular, MapleMark will suffer diminution in value, wasting of, and/or possibly the destruction of the Aston Martin.[33] If Molina is permitted to retain the vehicle while this lawsuit proceeds, the Aston Martin will diminish in value each time it is driven. Moreover, Molina has already proven that he is not above concealing the funds he stole from

---

[31] *See* Ex. A.
[32] Ex. A; Ex. A-4; Ex. A-6.
[33] Ex. A, ¶ 13; Ex. A-8.

MapleMark.[34]  Molina may try to sell the Aston Martin and conceal or spend the funds, especially now that MapleMark and the Bank of America have frozen the accounts.[35]

### D.  THE POTENTIAL HARM TO MAPLEMARK BY FAILING TO ENTER THE TRO OUTWEIGHS ANY POTENTIAL HARM DEFENDANTS COULD SUFFER BY ENTERING THE TRO

19. If the Court were to refuse to enter the Temporary Restraining Order, Defendants are likely to continue spending, disposing of, and concealing the funds they stole from MapleMark.  Defendants have already spent and concealed the majority of the funds.[36]  There is no reason to believe Defendants will not continue to do so if the restraining order is not issued.  Moreover, Molina continues to drive the Aston Martin.[37]  Each time Molina drives the Aston Martin, it diminishes in value and is at risk of being damaged.  If Molina were to sell the Aston Martin, he could further spend or conceal the money, making it more difficult, if not impossible, for MapleMark to ultimately recover should it prevail on its claims. The risk to MapleMark if the Court refuses to enter the Temporary Restraining Order is substantial.

20. In contrast, the potential harm to Defendants if the Court were to enter the Temporary Restraining Order is non-existent or negligible.  The Defendants never put any money into the MapleMark account.[38]  If the Court were to enter the TRO, Defendants would merely be required to (1) stop spending, transferring, or concealing MapleMark's funds; (2) turn over the car that was purchased with MapleMark's money to be held in trust by MapleMark; and (3) transfer the funds remaining in the Bank of America account back to MapleMark, also to be held in trust pending an ultimate judgment.  In other words, even if Defendants ultimately prove that the failure to transfer $250,000 to MapleMark was the result of a mistake rather than fraud,

---

[34] Ex. A-6.
[35] Ex. A, ¶ 11.
[36] Ex. A, ¶ 9; Ex. A-4; Ex. A-5; Ex. A-6.
[37] Ex. A, ¶ 13; Ex. A-8.
[38] Ex. A, ¶¶ 8 – 9; Ex. A-4.

Defendants would still not be harmed because Defendants' personal funds are not being put at risk. Moreover, the proposed Temporary Restraining Order is carefully worded to avoid interference with or disruption of JGS's true business operations. Accordingly, the risk to Defendants if the Court enters the Temporary Restraining Order is non-existent, or at most negligible.

E.   **ENTERING THE TRO IS IN THE PUBLIC'S INTEREST**

21.   Entering the Temporary Restraining Order is consistent with Florida law and the public interest in deterring fraudulent behavior. *TemPay*, 2011 WL 13143957 at * 2 ("The entry of a temporary restraining order preventing Defendants from disposing of or concealing funds and assets obtained as a result of their allegedly unlawful conduct is consistent with the public interest and Florida law designed to deter fraudulent behavior."). Additionally, entering a temporary restraining order promotes the public interest because MapleMark is a FDIC insured bank. Entering a restraining order denying Defendants the benefits of their fraudulent conduct and enabling MapleMark to recover as much as possible of the amounts stolen from it protects the integrity and reliability of the banking system.

F.   **NOTICE TO DEFENDANTS IS NOT REQUIRED BECAUSE THERE IS A SUBSTANTIAL THREAT THAT DEFENDANTS WOULD DISPOSE OR CONCEAL OF FUNDS AND ASSETS STOLEN FROM MAPLEMARK IF NOTICE WERE PROVIDED**

22.   As has been shown above, Defendants have already concealed, disposed of, and spent funds that they stole from MapleMark.[39] If Defendants were provided the standard fourteen (14) day notice and an opportunity to be heard before the Court enters the Temporary Restraining Order, Defendants are likely to further attempt to conceal and dispose of the funds and any traceable assets, including the Aston Martin, to hide their illegal activity and prevent

---

[39] Ex. A, ¶ 9; Ex. A-4; Ex. A-5; Ex. A-6.

MapleMark from ultimately tracing the funds.[40] Under such circumstances, courts in this district have recognized that no notice is required. *TemPay*, 2011 WL 13143957 at * 2 ("The Court specifically finds that in light of the substantial and irreparable harm that Plaintiff faces as a result of the Defendants' alleged fraudulent scheme and the possible disposition or concealment of funds rightfully belonging to Plaintiff (and assets traceable thereto), no notice is required prior to entry of a temporary restraining order."). Furthermore, MapleMark made reasonable efforts to contact Molina on his cell phone and by email.[41]

### G. IN A SUBSTANTIALLY SIMILAR CASE, A FLORIDA DISTRICT COURT ENTERED A TRO AGAINST THE DEFENDANTS

23. In *TemPay Inc. v. Biltres Staffing of Tampa Bay, LLC*, No. 8:11-cv-2732-T-27AEP, 2011 WL 13143957 (M.D.Fla. December 13, 2011), the district court faced circumstances substantially similar to the facts here. In *TemPay*, the defendants induced the plaintiff to purchase certain purported receivables allegedly owed to the defendants by a number of customers. *Id.* at *1. After the purchase was made, the plaintiff discovered that the receivables were nonexistent, based on fictitious customers, and/or based on invoices fraudulently created by the defendants. *Id.* In support of its request for a temporary restraining order, the plaintiff also showed that, the defendants had dissipated some of the funds received from the plaintiff. *Id.* Based upon those facts, the court concluded that a temporary restraining order was proper. *Id.* at *2.

24. Similarly, here, the evidence shows that Defendants induced MapleMark to credit the JGS MapleMark account by promising to transfer $250,000 from his alleged Chase Bank account.[42] However, the Chase Bank account was closed before the transfer could occur and

---

[40] Ex. B.
[41] *Id.*
[42] Ex. A, ¶¶ 7 – 8; Ex. A-3; Ex. A-4.

likely before Defendants even executed the ACH Authorization.[43] As the plaintiff in *TemPay*, MapleMark has produced evidence establishing that Defendants have dissipated the funds they obtained from MapleMark and are likely to continue spending or concealing the funds and wasting, concealing, or transferring the assets purchased with the funds.[44] Therefore, as the court did in *TemPay,* the Court should grant MapleMark's motion for a temporary restraining order.

H.  **$2,000 IS AN APPROPRIATE BOND AMOUNT UNDER THE CIRCUMSTANCES HERE**

25. "[I]t is well-established that the amount of security required by the rule is a matter within the discretion of the trial court, and the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (quotation omitted). "[A] bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success." *Lepper v. Thomas Clayton Franks, Rescuetouch, LLC*, No. 5:18-cv-644-Oc-41PRL, 2018 WL 8221521, *3 (M.D.Fla. Dec. 28, 2018).

26. Here, as has been shown above, MapleMark is likely to succeed on its claims. Moreover, the risk of harm to Defendants if the Court were to enter the Temporary Restraining Order is minimum (and arguably non-existent because the TRO only seeks to enjoin Defendants from spending MapleMark's money or disposing/wasting property purchased with MapleMark's money). For example, Defendants have no equity in the 2019 Aston Martin; all of the proceeds used to purchase the vehicle belonged to MapleMark.[45] Therefore, $2,000 is an appropriate

---

[43] Ex. A, ¶ 10.
[44] Ex. A, ¶¶ 9, 11-13; Ex. A-4; Ex. A-5; Ex. A-6; Ex. A-8.
[45] *See* Ex. A-4 (other than the Chase Bank credit which was later reversed when Chase Bank provided notice that the account was closed, showing no credits to JGS's MapleMark Account, only debits).

amount under the circumstances here as there is no real danger that Defendants will be damaged as a result of the TRO.

27. MapleMark respectfully requests the Court enter a Temporary Restraining Order directing Defendants and their officers, directors, parents, agents, servants, employees, attorneys, representatives and those in active concert or in participation with them and any person acting by or under their authority (individually and collectively, the "Enjoined Parties") be enjoined and restrained from:

    (i)    concealing, damaging, or destroying any property which Defendants purchased with the funds from MapleMark;

    (ii)    assigning, selling, transferring, encumbering, secreting, converting, destroying, wasting, dissipating, disposing of, or expunging any property that was purchased using funds from J Global Supply LLC's ("JGS") MapleMark account or the Bank of America account to which MapleMark was directed to wire funds; and/or

    (iii)    assigning, transferring, spending, secreting, converting, encumbering, destroying, wasting, disposing of any funds remaining in JGS's account with Bank of America.

28. MapleMark also requests that Defendants be required to (i) turn over to a sheriff or other officer of the court the silver 2019 Aston Martin Vantage, Vin # SCFSMGAW5KGN00174 owned by JGS, to be held, in trust, while this lawsuit remains pending; and (ii) if necessary or required by Bank of America, execute any documents necessary to cause the MapleMark funds in JGS's Bank of America account to be wired to MapleMark to be held in trust while this lawsuit remains pending.

29. Attached hereto as Exhibit C is a proposed order granting Plaintiff's Motion for Temporary Restraining Order and setting the matter for a preliminary injunction hearing within the time required by law.

## V.
## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff MapleMark respectfully requests that the Court grant MapleMark's Motion and enter the Temporary Restraining Order, set a hearing on MapleMark's request for a preliminary injunction within 14 days from the date of the order granting the Motion, and for such other and further relief, general or special, whether at law or equity, to which MapleMark may show itself entitled.

        Respectfully submitted,

By:   */s/ Buffey E. Klein*
       Buffey E. Klein
       Florida Bar No. 0034639
       Buffey.Klein@huschblackwell.com

HUSCH BLACKWELL LLP
1900 North Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 *facsimile*
***ATTORNEYS FOR PLAINTIFF***
***MAPLEMARK BANK***